**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zelpha Tami Zimmerman, | No. CV-18-00142-TUC-EJM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Zelpha Tami Zimmerman brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner"). Plaintiff raises two issues on appeal: 1) the Administrative Law Judge ("ALJ") erred by failing to give germane reasons before rejecting the limitations suggested by Karen Lunda's functional capacity evaluation report; and 2) the ALJ erred by failing to evaluate Plaintiff's symptoms pursuant to Social Security Ruling ("SSR") 16-3p. (Doc. 15).

Before the Court are Plaintiff's Opening Brief, Defendant's Response, and Plaintiff's Reply. (Docs. 15, 22, & 25). The United States Magistrate Judge has received the written consent of both parties and presides over this case pursuant to 28 U.S.C. § 636(c) and Rule 73, Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that this matter should be remanded for further administrative proceedings.

. . .

## I. Procedural History

Plaintiff filed an application for social security disability benefits on December 13, 2013. (Administrative Record ("AR") 133). Plaintiff alleged disability beginning on November 26, 2013 based on inability to walk, severed tendons in both feet, and bi-lateral ankle problems. (AR 67). Plaintiff's application was denied upon initial review (AR 73) and on reconsideration (AR 80). A hearing was held on August 1, 2016 (AR 36), after which ALJ Yasmin Elias found, at Step Four, that Plaintiff was not disabled because she could perform her past relevant work as an optician. (AR 25). On January 24, 2018 the Appeals Council denied Plaintiff's request to review the ALJ's decision. (AR 1).

Plaintiff's date last insured ("DLI") for DIB purposes is December 31, 2018. (AR 19). Thus, to be eligible for benefits, Plaintiff must prove that she was disabled during the time period of her alleged onset date ("AOD") of November 26, 2013 and her DLI of December 31, 2018.

## II. Factual History[1]

Plaintiff was born on February 3, 1964, making her 49 years old at the AOD of her disability. (AR 67). She completed two years of college and has worked as a licensed optician since 1990. (AR 164).

### A. Treating Physicians

On December 18, 2012 Plaintiff was seen for evaluation of left thumb pain. (AR 250). X-rays showed basal joint arthritis, subluxation mild, some loss of joint space, and some sclerosis, and Plaintiff opted to treat with a splint.

On February 8, 2012 Plaintiff reported severe headaches on a daily basis, was forgetful, and losing her balance. (AR 410).

On February 1, 2013 Plaintiff reported an average of two headaches monthly, lasting several days at time, associated with visual changes. (AR 387). She also had occasional head tremor and clenching of the right arm.

---

[1] While the undersigned has reviewed the entirety of the record in this matter, the following summary includes only the information most pertinent to the Court's decision on Plaintiff's claims on appeal.

On March 21, 2013 Plaintiff reported severe headaches in the right temporal area that come and go, not relieved with Aleve, Imitrex, or Vicodin. (AR 389).

On April 11, 2013 Plaintiff reported her headaches were improved with Topamax. (AR 385). She also reported almost daily left arm shaking, and vague left eye visual changes at night.

On August 2, 2013 Plaintiff was seen for left foot and ankle pain and reported significant pain with weightbearing, worse with activity. (AR 248). The impression was heel cord tendinitis and bilateral plantar fasciitis, and she was recommended for shoe orthosis and dorsiflexion splint.

On September 13, 2013 Plaintiff complained of left ankle pain after rolling her ankle and was referred for a MRI. (AR 246).

On October 8, 2013 Plaintiff reported a significant amount of pain in the feet and ankles that limited her activity. (AR 244). Plaintiff rejected injections and casting and was recommended to do stretching, physical therapy, wear a boot, and limit weightbearing on the left.

On November 7, 2013 Plaintiff was doing physical therapy and was slightly better, but reported right ankle problems and instability and was referred for a MRI. (AR 242).

On November 26, 2013 Plaintiff reported significant left foot pain. (AR 240). The MRI showed some changes in the navicular joints consistent with arthritis, fibrocartilaginous calcaneonavicular coalition, and some evidence of osteochondral lesion. She chose to have surgery on the left foot for excision of the calcaneonavicular coalition and release of the plantar fascia.

On December 4, 2013 Plaintiff had surgery on her left foot. (AR 254).

On December 16, 2013 Plaintiff had minimal complaints of pain after surgery. (AR 238).

On January 7, 2014 Plaintiff was doing well and complained of mild pain and stiffness, and was referred for physical therapy. (AR 236).

On February 7, 2014 Plaintiff complained of mild discomfort and had a mild limp;

range of motion was significantly improved with PT but she still had problems with long walks. (AR 234).

On May 9, 2014 Plaintiff reported bilateral thumb and hand pain, and ring and small fingers catching and locking. (AR 228). Plaintiff reported months to years of joint pain in her thumbs, but recently getting worse and over the counter medications not helping. The assessment was lateral thumb CMC arthritis, left worse than right, and swan-neck deformity/locking of bilateral ring and small fingers. Plaintiff did not want an injection but would try a brace and Voltaren gel.

On May 12, 2014 Plaintiff had an ankle sprain and contusion after she rolled her ankle and a trashcan fell on her. (AR 224). X-rays of the ankle showed no abnormalities.

On June 13, 2014 Plaintiff was doing significantly better after surgery and with PT, complaining of less pain, and walking better. (AR 221).

On July 3, 2014 Plaintiff had improved hand arthritis and de Quervain's after injections, no numbness and tingling, no locking or clicking, and no sharp pains. (AR 219).

On October 6, 2014 Plaintiff reported pain in both ankles, worse with activity, and episodes of popping and rolling. (AR 273). On exam she had some tenderness with palpation, full range of motion, no swelling on the right, and walked with a slight limp.

On October 9, 2014 Plaintiff reported headaches for the past 3–4 months. (AR 367).

On October 16, 2014 Plaintiff had a MRI of the right ankle which showed calcaneonavicular coalition, mild posterior tibialis tendinosis, moderate middle and anterior subtalar joint degenerative arthrosis, mild/moderate plantar fasciitis, and mild sinus tarsi edema. (AR 265–67). A MRI of the left ankle showed bifurcate ligament sprain, low-grade extensor digitorum brevis strain, and mild insertional posterior tibialis tendinosis. (AR 269–71).

On November 14, 2014 Plaintiff had pain in the left ankle after a twisting injury and was recommended to continue using her ankle brace, icing, and inflammatory

medication. (AR 263).

On November 25, 2014 Plaintiff had increased pain in the right foot and was recommended for surgery. (AR 261). The impression was bilateral foot and ankle pain, tarsal coalition, plantar fasciitis, and heel cord tendinitis.

On December 10, 2014 Plaintiff had surgery on her right foot and got steroid injections in the right foot and both thumbs. (AR 251).

On December 23, 2014 Plaintiff was doing well after surgery with minimal complaints of pain and was referred for PT. (AR 259).

On February 10, 2015 Plaintiff's right foot was doing well after surgery, but she had pain in the left foot and received an injection. (AR 257).

On May 21, 2015 Plaintiff reported a four-year history of pain in her thumbs and intermittent locking of the fingers, and that she had some relief with injections in the past. (AR 328). She was using ring splints and attempting to use large thumb braces but had significant discomfort. The impression was markedly symptomatic stage III osteoarthritis of the bilateral thumb CMC joints, marked MCP hyperextension instability with early osteoarthritis, and significant ligamentous hyperlaxity with very mild swan neck deformities. (AR 329). Plaintiff received injections and was recommended to use hand braces.

On July 16, 2015 Plaintiff reported two months of relief after injections in her thumb joints, but now had severe pain and requested repeat injections. (AR 327).

On August 26, 2015 Plaintiff reported a mass in her right hand, extremely tender to palpation, and had significant triggering of the right ring finger. (AR 324).

On September 22, 2015 Plaintiff had right ring trigger finger release surgery and excision of arterial thrombosis. (AR. 318).

On October 13, 2015 Plaintiff reported joint pain and left hand pain, and no headaches or migraines. (AR 303). On exam she appeared healthy, walked normally, and had normal motor strength and tone. (AR 303–04). At another appointment that same date, Plaintiff reported migraines 4–5 times per month. (AR 349).

On November 10, 2015 Plaintiff was seen for weight gain and reported moderate physical activity. (AR 299). She also reported leg pain with exercise, and no muscle pain or weakness, joint pain, swelling, migraines, or headaches. (AR 300). On exam she appeared healthy, walked normally, and had normal motor strength and tone. (AR 301).

On December 15, 2015 Plaintiff had arthroplasty and arthrodesis surgery on her left thumb. (AR 309).

On June 29, 2016 Plaintiff had a MRI of the cervical and lumbar spine. (AR 445). Findings showed degenerative disc disease and the impression was multilevel disk desiccation indicating intervertebral disk degeneration with disk displacements. (AR 446, 449).

B.    Additional Medical Information

Plaintiff saw physical therapist Karen Lunda for a functional capacity evaluation ("FCE") on November 23 and 24, 2015. (AR 425). Plaintiff was using a knee walker and brace on the left hand. She uses the walker or a cane to walk any distance from her car to inside a building, and uses the cane and furniture for support at home because her ankles roll and she might fall. (AR 426–27). Subjectively, Plaintiff reported the following: She sprained her right ankle in 2011 or 2012, then the left foot also became painful and got worse; her husband and son help her into the tub because it hurts to take weight in her feet and hands; she hasn't felt like exercising but tries to do the stationary bike 10 minutes per day; she has back, hip, and knee pain which she attributes to her abnormal gait; she has severe migraines 3–5 times a month, each lasting 2–3 days or up to a week; her feet are stiff, her ankles roll, and she falls; she doesn't walk well or have balance; she can't cook, clean, or do yard work; she used to drive a motorcycle and ride horses but can't do those things anymore; she drops plates and can't put on jewelry or makeup, and doesn't write anymore because holding a pen is too painful. (AR 431–33).

Lunda reported that Plaintiff was pleasant and cooperative during testing:

> During the fine motor testing on day one, she demonstrated much greater difficulty than would be expected with extremely slow pacing. Although she may have signs and symptoms on physical exam . . . there was nothing to indicate

> such significant deficits with fine motor control. This was discussed at length with the client. She stated "I'm compensating so it doesn't hurt so much." She was told that the manner in which she was compensating was actually making it more difficult for her because she was applying more force with greater range of motion and sustaining a movement for a longer period of time. She asked if we could try the tests again. These were repeated and the client improved significantly. She then stated "I figured out how to do it so it doesn't hurt so bad."
>
> Effort and pain were discussed again on day 2 prior to the fine motor testing. The client did even better than she did on day one. The client stated she tends to be cautious because she is afraid of hurting herself.

(AR 427–28). Lunda used multiple consistency checks and stated that Plaintiff demonstrated a consistently reliable performance. (AR 434). Specifically, Plaintiff's functional abilities and limitations were consistent with her diagnoses, medical history, and findings on exam; performance was consistent among FCE items; multiple activities were performed on both days and Plaintiff did better on day two, which was much more representative of her abilities; and Plaintiff ultimately gave good effort on all test items. (AR 434–35).

Lunda reported that Plaintiff had above average fine motor skills, and her scores were obtained without the use of a brace on either hand. (AR 436). Lunda completed a medical work tolerance form and opined that Plaintiff could not perform sedentary work because she could not lift 10 pounds and could not carry. (AR 443). She recommended the following limitations: stand 5–10 minutes at a time for 1–2 hours total; sit for 30–60 minutes at a time for 7–8 hours total; walk 5–10 minutes at a time for 5–10 minutes total; would need to change from sitting to standing/walking every 30–60 minutes; cannot use feet for frequent movements; cannot climb ladders or stairs; never crouch or kneel; can frequently work in a clerical position; can occasionally to frequently reach above shoulder level and work with arms extended in front; can never grip, push, or pull; and can occasionally to frequently pinch, feel/touch, and perform fine movements like assembly/typing. (AR 443–44). Lunda stated that if employment with these restrictions was available, Plaintiff could work full time. (AR 444). Lunda did not opine how many

days of work Plaintiff would be expected to miss a month. (AR 443).

        C.      <u>Plaintiff's Testimony</u>

On a disability report dated May 20, 2014 Plaintiff reported she had lost mobility in her right foot and in her left foot after surgery, which made it harder for her to walk. (AR 169). She re-injured her left foot on May 7, 2014. Plaintiff reported difficulty getting out of bed, getting dressed, and doing chores because of difficulty standing and lack of balance, and needed help getting in and out of the bathtub. (AR 173). She was using a knee walker, hand braces, and finger splints, and was having difficulty at physical therapy due to swelling. (AR 174).

On a disability report dated October 21, 2014 Plaintiff reported her hands were worse and she had to wear braces at night. (AR 178). Her feet were worse and a MRI showed she needed more surgery. Her headaches were also worse and lasting 5 days. Plaintiff reported she was dropping plates because of difficulty holding things and had to cut her hair because she couldn't brush it. She could only walk for half an hour before her feet would swell. Plaintiff also reported new problems in her right knee, back, and bursitis in her right hip. (AR 179). She had trouble getting in and out of the tub because her ankles roll and she falls, and her feet swell so badly she is limited in what shoes she can wear. (AR 183). It is too difficult to brush her hair or put on makeup and she can't wear her wedding ring because her hands are swollen. It is harder for her to get out of chairs because her muscles and joints are stiff and painful, and her son drives her more because it is hard for her to operate the foot pedals in the car. Plaintiff also reported she tried to take the trash out, fell, and was trapped under the trashcan for an hour.

At the hearing before the ALJ, Plaintiff testified that when she worked as an optician she was on her feet for 90 percent of the day and used her hands 90 to 95 percent of the time. (AR 42). When her disability began she was having pain in her wrists and thumbs, dropping things, unable to hold things, swollen feet, and severe pain in her feet when walking. (AR 44). Since her evaluation with Lunda in 2015, Plaintiff reported her problems had gotten worse. (AR 47). It was very uncomfortable to walk, move around,

and get up and down; her left heel pain was excruciating; and it was hard to pick things up and carry things. She takes pain medication, anti-inflammatories, and seizure medication for her migraines. (AR 48). Plaintiff gets migraines three to four times a week, they vary in duration, and they sometimes put her into a seizure or small stroke. She loses sight in her right eye, tremors, vomits, and lies down in a dark room. (AR 49). She was referred to a neurologist but they were still doing testing to figure out the cause. Her headaches are not very controllable; medication helps sometimes but sometimes it does not. (AR 52).

On a typical day Plaintiff gets up and takes medication, her husband helps her bathe, then she lies in bed or tries to sit and watch a movie with her son but she usually doesn't make it through the movie. (AR 53). Her son will help her back to bed and make lunch; her husband makes dinner and then they go to bed. She drives to appointments if she needs to, but she doesn't venture too far.

D.     Lay Witness Testimony

Plaintiff's husband, Bryan Salzman, submitted a letter dated June 27, 2016. (AR 212). He described Plaintiff as someone who was always very independent and a hard worker, but that all of her physical abilities have deteriorated. She has problems getting around the house and going out in public; she cannot get in and out of the tub alone and has fallen twice so he always helps her. Because of her hand weakness and pain, Plaintiff cannot carry a full pot or use a knife, and Bryan cuts all of her food. She also needs both hands to hold a glass of water and has dropped several glasses. Bryan has to support Plaintiff when going up or down stairs; she stands behind him and puts her hands on his shoulders. Staircases cause her to be very fearful of traveling outside the home. (AR 212–213). Plaintiff's ability to walk and use her hands has degraded, and she has difficulty writing or typing for long periods of time. (AR 213). She also has body tremors and her wrists and hands curl up. Plaintiff also has migraines that cause vomiting and are becoming more common. They used to walk their dog every night but now Plaintiff is afraid of falling and has pain in her feet and ankles.

Plaintiff's son, Philip Zimmerman, also submitted a letter. (AR 214). He described Plaintiff as formerly very active but now she cannot use the stairs or walk from room to room, has bad migraines, and cannot hold utensils, brush her hair, or put on lipstick. Plaintiff used to be very independent but now needs someone to care for her daily. Philip described one incident where Plaintiff was in tears because she was unable to zip and button her pants and had to get help from her granddaughter. Philip was making breakfast that day and had to cut Plaintiff's pancakes for her, then help her to her room when she became too uncomfortable from sitting.

E.    Vocational Testimony

At the hearing before the ALJ, Gretchen Bakkenson testified as a vocational expert. She stated that Plaintiff's past work as an optician was classified as skilled and light exertional level, but that Plaintiff described it as medium. (AR 56).

The ALJ asked Bakkenson to assume an individual with Plaintiff's education and work experience who could perform light work with the following limitations: never climbing ladders, ropes, or scaffolds; occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; moderate exposure to hazards; and frequent handling or feeling. (AR 57). Bakkenson testified such a person could do Plaintiff's past work as an optician.

For the second hypothetical, the ALJ added a limitation to sedentary work. (AR 57). Bakkenson testified such a person could not return to the optician job. (AR 58). Bakkenson stated Plaintiff would have transferrable skills from working in a medical type office, so she could do other work as a medical receptionist. There were no other jobs Plaintiff could do that wouldn't require vocational training longer than 30 days. (AR 59).

Bakkenson stated that the highest amount of time an employer would tolerate someone being off task per day was 10 percent, and the highest amount of absenteeism would be one to two days per month. (AR 59).

On questioning by Plaintiff's attorney, Bakkenson testified that a medical receptionist job would require frequent reaching and handling, and occasional fingering. (AR 60). If an individual was limited to occasional reaching and handling, they could not

do the medical receptionist job. Plaintiff's attorney asked Bakkenson to assume an individual with the following limitations: stand 5–10 minutes at a time, 1–2 hours a day; sit 30–60 minutes at a time, 7–8 hours a day; walk 5–10 minutes at a time, 5–10 minutes a day; would need to change positions from sitting to standing or walking every 30–60 minutes; occasional bilateral pinching, fine movements, feeling, and touching; and no exposure to unprotected heights or moving machinery. (AR 61). Bakkenson testified such an individual could not do Plaintiff's past work as she described it or as defined in the DOT.

Bakkenson stated Plaintiff would have transferrable skills of appointment setting, general office skills such as medical filing, and customer service, all of which could be learned in 30 days. (AR 62–63). Plaintiff's attorney disputed that if something can be learned in 30 days, it is not a skill, so no transferrable skills had been identified. (AR 65).

F.    ALJ's Findings

The ALJ found that Plaintiff had the severe impairments of migraine headaches, degenerative disc disease, and disorders of muscle, ligaments, and fascia. (AR 21).

The ALJ found that Plaintiff's statements and the lay witness statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical and other evidence of record. (AR 23).

The ALJ gave some weight to Karen Lunda's opinion because the record did not show clinical findings consistent with the limitations assessed and Lunda seemed to uncritically endorse Plaintiff's subjective complaints, because Lunda observed that Plaintiff's movements were at first exaggerated and dramatic but subsequently improved, because Lunda was not an acceptable medical source, and because Lunda conducted extensive testing. (AR 24).

The ALJ gave limited weight to the non-examining state agency physicians because their opinions underestimated the degree of potential limitations that could reasonably be expected from Plaintiff's medically determinable impairments. (AR 24–25).

The ALJ found that Plaintiff had the RFC to perform light work with the following limitations: unable to climb ladders, ropes, or scaffolds; occasionally climb, crouch, crawl, stoop, and kneel; moderate exposure to hazards; and frequent feeling and handling. (AR 22). The ALJ determined that Plaintiff could perform her PRW as an optician as generally performed. (AR 25). The ALJ therefore concluded that Plaintiff was not disabled.

### III.     Standard of Review

The Commissioner employs a five-step sequential process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Heckler v. Campbell*, 461 U.S. 458, 460–462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) the claimant's RFC precludes him from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Here, Plaintiff was denied at Step Four of the evaluation process. Step Four requires a determination of whether the claimant has sufficient RFC to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as that which an individual can still do despite her limitations. 20 C.F.R. §§ 404.1545, 416.945. A RFC finding is based on the record as a whole, including all physical and mental limitations, whether severe or not, and all symptoms. SSR 96-8p. If the ALJ concludes the claimant has the RFC to perform past work, the claim is denied. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits only "when the

ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). As set forth in 42 U.S.C. § 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Valentine*, 574 F.3d at 690 (internal quotations and citations omitted), and is "more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citations omitted). "Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland*, 257 F.3d at 1035 (internal quotations and citations omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

Additionally, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The claimant bears the burden to prove any error is harmful. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (citing *Shinseki v. Sanders*, 556 U.S. 396 (2009)). An error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations omitted); *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[I]n each case [the court] look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*,

674 F.3d at 1115. In other words, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id*. (internal quotations and citations omitted). Finally, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## IV. Discussion

Plaintiff argues that the ALJ erred by failing to give germane reasons to reject the limitations assessed by Lunda's FCE report, which limited Plaintiff's ability to sit, stand, walk, and use her upper extremities for pinching, fine movements, lifting, and carrying. Plaintiff also argues that the ALJ erred in failing to evaluate her subjective symptom testimony in accordance with SSR 16-3p. Plaintiff requests that the Court remand this matter for rehearing.

The Commissioner argues that the ALJ's evaluation of Lunda's opinion was reasonable where the ALJ discounted the opinion to the extent that it was inconsistent with the other medical evidence. The Commissioner further argues that the ALJ reasonably evaluated Plaintiff's subjective symptom testimony where it was inconsistent with the objective medical findings and where there was evidence that Plaintiff's conditions improved with treatment.

The Court finds that the ALJ failed to provide legally sufficient reasons to discount Lunda's opinion. This error impacted the ALJ's RFC assessment and the hypotheticals posed to the VE, as well as the ALJ's evaluation of Plaintiff's subjective symptom testimony. Consequently, the error was not harmless because it ultimately impacted the ALJ's Step Four nondisability finding. Because questions remain regarding whether in fact Plaintiff was disabled within the meaning of the SSA during the relevant time period, and because Plaintiff's subjective symptom testimony is best reassessed in light of the record as a whole, the Court finds that remand for further administrative

proceedings is appropriate.[2]

A. <u>Law</u>

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 830). "Courts afford the medical opinions of treating physicians superior weight because these physicians are in a better position to know plaintiffs as individuals, and because the continuity of their treatment improves their ability to understand and assess an individual's medical concerns." *Potter v. Colvin*, 2015 WL 1966715, at *13 (N.D. Cal. Apr. 29, 2015). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012.

Here, Plaintiff argues that the ALJ failed to give proper weight to the opinion of Karen Lunda, a physical therapist who conducted Plaintiff's two-day FCE. While Lunda is not considered an acceptable medical source, opinions from other sources must still be evaluated and the ALJ may discount their testimony only by giving reasons germane to each witness. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("Only physicians and certain other qualified specialists are considered acceptable medical sources."). Nurse practitioners, physician assistants, and therapists are considered "other sources." 20 C.F.R. § 404.1513(d). Pursuant to SSR 06-03p, "[i]nformation from these 'other sources' cannot establish the

---

[2] Because the Court will remand this matter for further administrative proceedings on an open record, the Court declines to address the other issues raised by Plaintiff in her appeal.

existence of a medically determinable impairment. . . . However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Thus, as one of Plaintiff's medical providers, Lunda qualifies as an "other source" that can provide evidence about the severity of Plaintiff's impairments and how they affect her ability to work, and the ALJ was required to evaluate Lunda's opinion and "give[] reasons germane to each witness" for discounting the opinion. *Ghanim*, 763 F.3d at 1161; 20 C.F.R. § 404.1513(a). The Court finds that the ALJ failed to meet that standard here.

B. <u>Analysis</u>

The ALJ gave some weight to Lunda's opinion and noted that Lunda had conducted extensive testing. (AR 24). However, the ALJ also gave several reasons for not assigning Lunda's opinion greater weight. The ALJ first stated that the record did not seem to show clinical findings consistent with the limitations assessed, and in particular, Plaintiff's foot and thumb surgeries seemed to have been successful. The Court finds that this was not a legally sufficient reason to assign reduced weight to Lunda's opinion. The ALJ failed to cite to any specific record that contradicted Lunda's opinion, and the Court cannot meaningfully review the ALJ's reasoning with such a broad citation. Further, the record documents that Plaintiff continued to report pain and problems in her feet and hands despite receiving surgery and injections. While the Commissioner is not required to "discuss *all* evidence[,]" the Commissioner is required to "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently" and "must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (emphasis in original) (internal quotations and citation omitted).

The ALJ also stated that Lunda seemed "to have uncritically endorsed the claimant's subjective complaints to a significant extent." (AR 24). This assertion is belied by Lunda's report. While a section of the report does detail Plaintiff's subjective

- 16 -

complaints, Lunda's opinion and the limitations she assessed were based on the findings she observed on examination of Plaintiff over two days of testing. For example, while Plaintiff reported that she would drop plates and could not put on makeup or jewelry, Lunda's testing actually showed that Plaintiff had above average fine motor skills, with average scores falling between 70–100 and Plaintiff scoring 112 on the right and 102 on the left. (AR 436). This finding is reflected in Lunda's recommendation that Plaintiff could use her hands for fine motor work on an occasional to frequent basis. (AR 438).

The ALJ also stated that the evaluation was performed over two days and Lunda observed that Plaintiff's movements were at first exaggerated and dramatic, "albeit with subsequent improvement." (AR 24). The Court finds that this is not a legally sufficient reason to discount Lunda's opinion. Lunda explained that during the fine motor testing on day one, Plaintiff demonstrated much greater difficulty than would be expected with extremely slow pacing. (AR 427). Lunda addressed these behaviors with Plaintiff and Plaintiff stated that she was compensating and being cautious so she didn't hurt herself. (AR 427–28). Plaintiff asked if she could repeat the tests and improved significantly, and performed even better on day two. *Id.* Lunda also thoroughly explained the use of multiple consistency checks to assess the reliability of Plaintiff's performance[3] and stated that Plaintiff was consistently reliable and ultimately gave good effort. (AR 434–35). No where did Lunda opine that Plaintiff was malingering, or that she continued to exhibit exaggerated responses.

Finally, the ALJ commented that Lunda was not an acceptable medical source. While information from "'other sources' cannot establish the existence of a medically determinable impairment. . . . information from such 'other sources' may be based on

---

[3] Performance was verified by the following: Plaintiff's functional abilities and limitations were consistent with her diagnoses, medical history, and findings on exam; performance was consistent among FCE items (similar items had similar performance); multiple activities were performed on both days and Plaintiff did better on day two, which was much more representative of her abilities; and Plaintiff "ultimately gave good effort on all test items as evidenced by predictable patterns of movement including increased accessory muscle recruitment, counterbalancing and attempts to counterbalance, gait changes, and physiological responses such as increased heart rate and respiration rate." (AR 434–35).

special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. Thus, the fact that Lunda is a physical therapist and therefore not an acceptable medical source is not a sufficient reason to discount her opinion because the ALJ was still required to evaluate her opinion according to the requirements set out in 20 C.F.R. § 404.1527(c). *See* 20 C.F.R. § 404.1527(f) (opinions from sources who are not acceptable medical sources are considered using the same factors that are applied to opinions from acceptable medical sources). Thus, in determining what weight to afford Lunda's opinion, the ALJ was required to consider (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of Lunda's opinion; (3) the consistency of the opinion and the record as a whole; (4) whether Lunda is a specialist; and (5) other factors that would support or contradict Lunda's opinion. Here, though Lunda only examined Plaintiff once, she conducted testing over a two-day period and wrote an extensive report detailing the tests administered, Plaintiff's performance, and recommended limitations. *See Revels*, 874 F.3d at 666–67 (ALJ erred by failing to state germane reasons to reject physical therapist's FCE in part where although physical therapist only examined claimant once, he did so for 3 ½ hours, extensively reviewed medical records from other doctors, and produced a 9-page report).

In sum, the Court finds that the ALJ erred by failing to provide legally sufficient, germane reasons to assign reduced weight to Lunda's opinion. Particularly in a case such as this where there are no opinions from Plaintiff's treating physicians recommending specific limitations on her ability to work, Lunda's opinion likely provides the best estimation of Plaintiff's physical capabilities and workplace limitations. However, the ALJ's RFC assessment fails to incorporate the majority of Lunda's recommendations. Accordingly, the Court finds that this matter should be remanded for further administrative proceedings to reassess Lunda's opinion and continue the five-step sequential evaluation process.

**V.     Remedy**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). Absent legal error or a lack of substantial evidence supporting the ALJ's findings, this Court is required to affirm the ALJ's decision. After considering the record as a whole, this Court simply determines whether there is substantial evidence for a reasonable trier of fact to accept as adequate to support the ALJ's decision. *Valentine*, 574 F.3d at 690.

"'[T]he decision whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (quoting *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Conversely, remand for an award of benefits is appropriate where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Even if those requirements are met, though, we retain 'flexibility' in determining the appropriate remedy." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

"[T]he required analysis centers on what the record evidence shows about the existence or non-existence of a disability." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "Administrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence may well prove enlightening in light of the passage of time." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits

is inappropriate." *Id.* "In evaluating [whether further administrative proceedings would be useful, the Court considers] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04. "This requirement will not be satisfied if 'the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistencies between his testimony and the medical evidence in the record,' because '[t]hese are exactly the sort of issues that should be remanded to the agency for further proceedings.'" *Brow-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler*, 775 F.3d at 1105).

Here, the Court finds remand for further administrative proceedings is appropriate. The ALJ erred by failing to provide legally sufficient, germane reasons for assigning Lunda's opinion reduced weight. Consequently, issues remain regarding Plaintiff's RFC and her ability to perform work existing in significant numbers in the national economy during the relevant time period. *See Hill v. Astrue*, 698 F.3d 1153, 1162–63 (9th Cir. 2012). Further, there seems to be a dispute in the record as to whether the VE correctly identified any transferrable skills. And, because the ALJ determined that Plaintiff was not disabled at Step Four, there was no Step Five finding made. If Plaintiff cannot perform her PRW but does have transferrable skills, then VE testimony is required to determine whether those skills are readily transferrable to a significant range of other work existing in the national economy. *See Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir. 1999) ("There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can perform: (a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines . . ."). While "[t]estimony of a VE . . . as to the claimant's particular limitations is not an absolute-requirement if it is clear from the record that the claimant is unable to perform gainful employment in the national economy," in this case the Court finds that the record is not clear and further administrative proceedings are required. *Stewart v. Colvin*, 16 F.Supp.3d 1209, 1217 (D. Or. April 15, 2014) (internal quotations

and citation omitted); *see also Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003) ("[N]o vocational expert has been called upon to consider all of the testimony that is relevant to the case . . . [and] in cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits." (internal quotations and citation omitted)); *Johnson v. Shalala*, 60 F.3d 1428, 1436 (9th Cir. 1995) ("the use of vocational experts is particularly important where 'the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue'" (quoting 20 C.F.R. § 404.1566(e))); *Treichler*, 775 F.3d at 1105 ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

This Court offers no opinion as to whether Plaintiff is disabled within the meaning of the Act. "The touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Brown-Hunter*, 806 F.3d at 495. Plaintiff's RFC and subjective symptom testimony are best reassessed in consideration of the entire record, and on remand the ALJ shall give further consideration to all of the previously submitted medical testimony and lay testimony and continue the sequential evaluation process to determine whether Plaintiff is in fact disabled. Additionally, the ALJ is required to consider all of Plaintiff's alleged impairments, whether severe or not, in the assessment on remand. SSR 86–8p, 1996 WL 374184, at *5 ("In assessing RFC, the adjudicator must consider limitations imposed by all of an individual's impairments, even those that are not 'severe.'"). "Viewing the record as a whole [this Court] conclude[s] that Claimant may be disabled. But, because the record also contains cause for serious doubt, [the Court] remand[s] . . . to the ALJ for further proceedings on an open record." *Burrell*, 775 F.3d at 1142. The Court expresses no view as to the appropriate result on remand.

## VI. Conclusion

In light of the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's

decision is remanded back to an ALJ on an open record with instructions to issue a new decision regarding Plaintiff's eligibility for disability insurance benefits.

The Clerk of Court shall enter judgment accordingly and close its file on this matter.

Dated this 14th day of August, 2019.

Eric J. Markovich
United States Magistrate Judge